United States District Court
Southern District of Texas
**ENTERED**
April 01, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HISCOX INSURANCE | § | |
| COMPANY, INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-01890 |
| | § | |
| LEVIS SOSA RODRIGUEZ, | § | |
| individually and d/b/a | § | |
| SOSA DRYWALL SPECIALIST | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

This is a declaratory judgment action concerning an insurance company's duty to defend and indemnify an insured.  Defendant Sosa Drywall Specialist ("Sosa Drywall"), a drywall replacement and installation business, purchased a general liability insurance policy (the "Policy") from Plaintiff Hiscox Insurance Company, Inc. ("Hiscox").  After being injured at a jobsite, one of Sosa Drywall's workers sued the company in state court. Sosa Drywall sought defense and indemnity from Hiscox for the claims in that case. Hiscox denied the request arguing that two provisions of the Policy removed Hiscox's duty to defend and indemnify Sosa Drywall.  Hiscox filed this action seeking a declaration that it has neither a duty to defend nor indemnify Sosa Drywall in the underlying state-court suit.

Pending before the Court is Plaintiff Hiscox Insurance Company's Motion for Summary Judgment.  (Dkt. No. 12).  After reviewing the Motion, the Response and

Replies, the record and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** Hiscox's Motion.  The Court finds that although Hiscox has no duty to defend, a declaration on the indemnity issue is premature at this time.

I.     **BACKGROUND[1]**

The facts are straightforward.  Sosa Drywall hired Jose Umanzor to work at a construction site in Harris County, Texas.  (Dkt. No. 12 at 5).  Sosa Drywall purchased a general liability insurance policy underwritten by Hiscox on October 6, 2020.  (*Id.* at 6). The Policy ran through October 6, 2021.  (*Id.*); (Dkt. No. 12-1 at 5–62).

On April 20, 2021, Umanzor was assembling scaffolding at a construction site in Harris County.  (*Id.*).  While Umanzor was ascending the scaffolding, the side of the scaffold for which Sosa Drywall was responsible collapsed.  (*Id.*).  As a result, Umanzor fell and sustained injuries, requiring two surgeries on his right foot.  (*Id.*).

Umanzor sued Sosa Drywall in state court, seeking to recover damages for his injuries and medical expenses.  (Dkt. No. 12-1 at 64– 67).  Sosa Drywall notified Hiscox of the suit by forwarding the original state-court petition to them.  (Dkt. No. 12-1 at 3). Hiscox informed Sosa Drywall that the suit was excluded from coverage under the Policy. (*Id.*).  Several months later, Sosa Drywall again informed Hiscox of the suit by forwarding an amended state-court petition by Umanzor.  (*Id.*).  Hiscox again informed Sosa Drywall

---

[1]     Except where noted, this section contains only undisputed facts, which have been construed in the favor of the nonmovant.  *See Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007).

that the suit was excluded under the Policy. (*Id.*). Following this, Sosa Drywall threatened to join Hiscox as a third-party defendant in the state-court suit. (*Id.* at 6).

In response, Hiscox filed this action seeking a declaration that it has no duty to defend and indemnify Sosa Drywall in the underlying state court suit. (Dkt. No. 12 at 6–7). Hiscox has filed a Motion for Summary Judgment on these claims, and that Motion is now ripe for review.

## II.    LEGAL STANDARD

### A.    RULE 56(a)

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 160 S.Ct. 2510, 91 L.Ed.2d 202 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 160 S.Ct. at 2510.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (cleaned up).  "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.  Nevertheless, a court must view the evidence in a light most favorable to the nonmovant.  *E.g.*, *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

### B.   INSURANCE CONTRACTS

In Texas,[2] "[i]nsurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally."  *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995)).  "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).  In determining this, "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.*

---

[2]   Neither Party disputes that Texas law applies.

(emphasis in original).  In examining the entire writing, "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."  *Id.*  But if two contractual provisions conflict, "the specific trumps the general."  *Millgard Corp. v. McKee/Mays*, 49 F.3d 1070, 1073 (5th Cir. 1995) (discussing Texas law).

## III.   DISCUSSION

Hiscox seeks summary judgment on three grounds.  First, Hiscox argues that the Policy's "ongoing operations" exclusion removes its duty to defend Sosa Drywall in state court.  (Dkt. No. 12 at 8–11).  Second, Hiscox argues that the Policy's employer liability exclusion removes its duty to defend.  (*Id.* at 11–12).  And third, Hiscox argues that it has no duty to indemnify Sosa Drywall.  (*Id.* at 12–13).

### A.   ONGOING OPERATIONS EXCLUSION

The Parties dispute whether the Policy's designated ongoing operations exclusion removes Hiscox's duty to defend.  (*Id.* at 8–11); (Dkt. No. 13 at 4).  Hiscox advances a twofold argument as support.  First, Hiscox argues that the Policy expressly lists "scaffolding operations" as one of the "designated ongoing operations" that excludes Hiscox's duty to defend.  (Dkt. No. 12 at 4).  Second, Hiscox argues that because the Policy expressly states that "[t]his Insurance does not apply to 'bodily injury' or 'property damage' arising out of the ongoing operations," Hiscox is under no duty to defend Sosa Drywall in the underlying state-court suit because Umanzor's injuries "arise out of" Umanzor's use of a scaffolding.  (*Id.* at 8–11).

In response, Sosa Drywall does not dispute that the insurance contract expressly lists "scaffolding operations" as one of the ongoing operations exclusions or that Umanzor's injuries arise out of his use of a scaffolding.  (*See* Dkt. No. 13 at 4).[3]  Sosa Drywall disagrees, however, that Umanzor's use of a scaffolding was "ongoing."  (*Id.*).  More specifically, Sosa Drywall argues that because Umanzor's use of the scaffolding was a one-time event, his use of a scaffold falls outside of the "ongoing operations" exclusions list because it was not "ongoing."  (*Id.*).  The Court agrees with Hiscox.

In duty-to-defend cases, courts follow the "eight-corners rule."  *Richards,* 597 S.W.3d at 494–95.  "The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from [the] terms of the policy and the pleadings of the third-party claimant."  *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006).  Considering "evidence outside the four corners of these two documents is generally prohibited."  *Id.*  Therefore, the Court will first look at the Policy's text and structure to discern the overall framework of the ongoing operations exclusion, and then to the petition's text to resolve any factual disputes.

---

[3]    It is unclear whether Sosa Drywall is in fact arguing the definition of "scaffolding."  Sosa Drywall's brief seemingly agrees with Hiscox that *what* Umanzor fell off of was a scaffold.  (Dkt. No. 13 at 4) (explaining that "the use of the platform ladder/scaffolding was a onetime use at the request of Mr. Umanzor[.]").  Instead, Sosa Drywall's brief focuses on whether the scaffolding operation was "ongoing."  (*Id.* at 4).  But in the summary judgment hearing, Sosa Drywall's counsel stated that this case "revolves around the definition of scaffolding operations."  (Hearing at 3:21:59–22:05).  Therefore, the Court will examine the definition of "scaffolding operations," even though it was not raised in Sosa Drywall's briefing.

Here, the Policy's text provides a relatively straightforward ongoing operations exclusion.  Endorsement 15 of the Policy excludes coverage for bodily injury "arising out of the ongoing operations described in the Schedule of" Endorsement 15.  (Dkt. No. 12-1 at 44).  And Endorsement 15 expressly lists "[s]caffolding operation" as one of several "designated ongoing operations."  (*Id.*).  Thus, looking to the plain text of the Policy, the Court must determine if Umanzor's injuries "arose out of" a "scaffolding operation."

To determine if Umanzor's injuries arose out of a scaffolding operation, the Court looks to the face of his underlying state-court petition.  *See, e.g.*, *GuideOne Elite*, 197 S.W.3d at 307.  In Umanzor's petition, he describes the platform he was going up as "scaffolding" multiple times:

- "[Umanzor] and Sosa [Drywall] placed scaffolding to do their job."

- "[Umanzor] assembled one side and [Sosa Drywall] assembled the other side of the scaffolding."

- "[Umanzor] was going up the scaffolding when the side that Sosa [Drywall] assembled, collapsed and Plaintiff fell onto the ground."

(Dkt. No. 12-1 at 71); (*see also id.* at 72) (describing causes of action to be from "operation of the scaffolding").  Thus, the Court holds that the operations exclusion applies because (1) the Policy expressly excludes scaffolding operations from Umanzor's duty to defend and (2) the face of Umanzor's petition expressly states that he fell off a scaffold as a factual matter.

Second, this Court must determine if Umanzor's injuries "arose out of" the use of this scaffolding.  They did.  The phrase "arise out of" is defined broadly under Texas law. *Utica Nat. Ins. Co. of Tex. V. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("This Court

has held that 'arise out of' means that there is simply a 'causal connection or relation,'
which is interpreted to mean that there is but for causation, though not necessarily direct
or proximate causation." (quoting *Mid-Century Ins. Co. of Tex., a Div. of Farmers Ins. Group
of Companies v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999))). Following this broad definition
of "arise out of," the Court holds that Umanzor's injuries arise out of his use of the
scaffolding because his injuries occurred while climbing—or rather, while falling—from
the scaffolding. (Dkt. No. 12-1 at 71) ("[Umanzor] was going up the scaffolding when the
side that Sosa assembled, collapsed and [he] fell onto the ground.").

To the extent that Sosa Drywall argues that Umanzor fell off a "single-use
platform" and not a scaffold, this argument is also unavailing. *See supra* n.3. As
previously mentioned, the eight-corners rule generally prohibits a court from peeking at
extrinsic evidence in third-party duty-to-defend cases. *See Gonzalez v. Mid-Continent Cas.
Co.*, 969 F.3d 554, 557 (5th Cir. 2020) (applying Texas law). With that being said, the
Supreme Court of Texas has recently expanded exceptions to the eight-corners rule. *See
Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 202–03 (Tex. 2022). In
*Monroe*, the Supreme Court of Texas reiterated that "the eight-corners rule remains the
initial inquiry to be used to determine whether a duty to defend exists[.]" *Id.* at 203. But
notably:

> [I]f the underlying petition states a claim that could trigger
> the duty to defend, and the application of the eight-corners
> rule, due to a gap in the plaintiff's pleading, is not
> determinative of whether coverage exists, Texas law permits
> consideration of extrinsic evidence provided the evidence (1)
> goes solely to an issue of coverage and does not overlap with
> the merits of liability, (2) does not contradict facts alleged in

the pleading, and (3) conclusively establishes the coverage
fact to be proved.

*Id.*

Sosa Drywall argues that, following *Monroe*, the Court should examine extrinsic
evidence to determine if Umanzor fell off a single-use platform or a scaffolding.  (Dkt.
No. 13 at 4).  However, the *Monroe* exception does not apply.  As a threshold to examining
extrinsic evidence, there must be "a gap in the plaintiff's pleading" and here there is none.
Sosa Drywall does not agree with Umanzor's word choice but there is no ambiguity in
what he pleaded.  Because there is no "gap" the Court cannot substitute Sosa Drywall's
preffered definition of a single-use platform for Umanzor's pleading of scaffold.  *See
Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self Ins.
Fund,* 642 S.W.3d 466, 477–78 (Tex. 2022) (declining to apply *Monroe* to the term "golf
cart" when the underlying state-court petition alleges that the injured "was thrown from
a 'golf cart'").  Extrinsic evidence stating that Umanzor fell from anything else besides
scaffolding, such as a single-use platform, would "contradict facts alleged in the
pleading." *Monroe*, 640 S.W.3d at 202.  Therefore, the Court finds that the *Monroe* extrinsic
evidence holding does not apply to this case.

As a final effort to avoid the Policy's "designated ongoing operations" exclusion,
Sosa Drywall argues that Umanzor's use of scaffolding was a one-time use and not an
"ongoing" activity.  (Dkt. No. 13 at 4).  This too fails.

As previously discussed, the Policy's ongoing operations exclusion has a two-part
framework.  First, Endorsement 15 of the Policy excludes coverage for bodily injury

"arising out of the ongoing operations described in the Schedule of" Endorsement 15. (Dkt. No. 12-1 at 44).   And second, Endorsement 15 expressly lists "[s]caffolding operation" as one of the many "designated ongoing operations." (*Id.*).   Notably, the page in which this two-part framework occurs is titled, "Exclusion—Designated Ongoing Operations." (*Id.*).   As a general matter of contract interpretation, courts can look to a title for interpretive guidance. *See RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015) ("[H]eadings and titles provide context and can inform the meaning of the sections they label.").   But a section's title is not dispositive.   When a title's meaning is "inconsistent with the plain meaning of the provision's operative language, [courts] afford greater weight to the operative language." *Id.*

Sosa Drywall is correct that "ongoing" is a key term in Endorsement 15. "Ongoing" modifies all of the designated operations listed in Schedule 1 and it modifies "operations" numerous times.   First, the section is entitled, "EXCLUSION – DESIGNATED *ONGOING* OPERATIONS." (*Id.*) (emphasis added).   Second, before listing specific activities as designated operations, the schedule states that the table is a "Description of Designated *Ongoing* Operation(s)." (*Id.*) (emphasis added).   Third, the operative section states that "This insurance does not apply to 'bodily injury' or 'property damage' arising out of the *ongoing* operations described in the Schedule of this endorsement[.]" (*Id.*) (emphasis added).   Because the title, subtitle, and one of the operative clauses all refer to the operations as being "ongoing," the Court finds that the operations exclusion applies only to "ongoing" operations.

With this in mind, the Court must determine whether Umanzor was engaged in an "ongoing" scaffolding operation at the time of his injury. He was. Merriam Webster's online dictionary defines "ongoing" as "being actually in progress." *Ongoing*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/ongoing (last visited March 30, 2024). At the time of his injury, Umanzor was in the process of using the scaffolding. Therefore, his injury arose from one of the "ongoing" operations.

Sosa Drywall argues for a narrower interpretation of "ongoing." It argues that because this was a one-time use of a scaffolding, Umanzor's injuries are not from an "ongoing" use of scaffolding operation. (Dkt. No. 13 at 4). The Court disagrees.

Sosa Drywall's proposed interpretation would have the Court read the "ongoing" operations exclusion as requiring a continued pattern of activity spanning multiple projects performed at different times on different jobsites. Texas law rejects this interpretation. Generally speaking, an insurance contract contains at least two types of temporal-based exclusions: "ongoing" and "completed" operations. *See Liberty Surplus Ins. Corp. v. Exxon Mobil Corp.*, 483 S.W.3d 96, 104 n.5 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *Gonzalez*, 969 F.3d at 562 n.† (applying Texas law). The Fifth Circuit generally interprets "present-tense clause[s]" as referring only to "damages that occur during 'the active performance of work.'" *Gonzalez*, 969 F.3d at 562 n.† (internal quotations omitted). Because Umanzor was injured during the "active performance of work," *id.*, the Court holds that his injury occurred during an "ongoing" scaffolding operation.

In sum, Hiscox has no duty to defend Sosa Drywall against Umanzor in the underlying state-court proceedings due to the Policy's ongoing operations exclusion.

### B.   INDEMNITY

Hiscox also seeks a declaration that it has no duty to indemnify Sosa Drywall in the underlying state court proceedings.  (Dkt. No. 12 at 12–13).  While Hiscox agrees that the duty-to-indemnify issue "generally may not be decided before the conclusion of the underlying litigation," Hiscox argues that this case is an exception because "there is no set of facts that could transform injuries arising from a fall from scaffolding erected by the claimant and insured into anything other than a loss excluded by the designated ongoing operations exclusion[.]"  (*Id.* at 12–13).  Sosa Drywall disagrees, arguing that the duty-to-indemnify issue is not ripe for the Court's determination because general issues of material fact plague the ongoing scaffolding operations and employer exclusion analyses.  (Dkt. No. 13 at 5).  The Court agrees with Sosa Drywall.

Courts "generally evaluate the insurer's duty to indemnify after the parties have developed the actual facts that establish liability in the underlying lawsuit."  *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668 (5th Cir. 2015) (applying Texas and Louisiana law).  In contrast to the eight-corners rule, "facts actually established in the underlying suit control the duty to indemnify."  *Fielder Rd. Baptist Church*, 197 S.W.3d at 310.  This is because "breach or compliance with the terms of an insurance policy is determined not by pleadings, but by proof."  *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009) (collecting cases).

There is an exception to Texas law's wait-and-see approach in determining the duty to defend—the so-called "*Griffin*" exception. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997). In *Griffin*, the Supreme Court of Texas stated that a court can determine the duty to indemnify "when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Id.* at 84 (emphasis in original).

Here, the Court declines to apply the *Griffin* exception to address Hiscox's duty to indemnify before the conclusion of the state-court suit. Hiscox argues that two provisions of the Policy negate its duty to indemnify: the ongoing operations exclusion and the employer exclusion. (Dkt. No. 12 at 13). But in each case, a set of facts exists implicating Hiscox's duty to defend. For instance, a jury could determine that Umanzor fell off of something that is not scaffolding. In addition, a jury could determine that Umanzor was an independent contractor. While the Court addressed these terms earlier in its duty-to-defend analysis, the Court relied upon Texas law's eight-corners rule and looked to the face of the pleading to resolve factual disputes. A jury in the underlying state court lawsuit would have no such obligation when resolving these issues.

For purposes of docket control, the Court will administratively close this case. After the conclusion of the state-court proceedings, the Parties shall file a joint status report indicating whether the case should be closed or whether a schedule should be entered.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff Hiscox Insurance Company's Motion for Summary Judgment.  (Dkt. No. 12). The Clerk is **DIRECTED** to administratively close this case.  The Parties are **INSTRUCTED** to file a joint status report no later than June 30, 2024, updating the Court on the status of the underlying state-court suit.

IT IS SO ORDERED.

Signed on March 30, 2024.

DREW B. TIPTON
UNITED STATES DISTRICT JUDGE