IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HISCOX INSURANCE COMPANY INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-1890 |
| | § | |
| LEVIS SOSA RODRIGUEZ, individually | § | |
| and d/b/a SOSA DRYWALL SPECIALIST, | § | |
| | § | |
| Defendant. | § | |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE DUTY TO INDEMNIFY

Plaintiff Hiscox Insurance Company Inc. (Hiscox") files this Motion for Summary Judgment on the Duty to Indemnify and would respectfully show:

### INTRODUCTION AND SUMMARY OF ARGUMENT

This is a declaratory judgment action concerning insurance coverage under a commercial general liability policy for an underlying personal-injury lawsuit styled *Jose Umanzor v. Levis Sosa d/b/a Sosa Drywall Specialists, et al.*, Cause No. 2021-45371, in the 157th Judicial District Court of Harris County, Texas (the Underlying Lawsuit). In a Memorandum Opinion and Order dated March 30, 2024, this Court partially granted Hiscox's Motion for Summary Judgment and declared that Hiscox has no duty to defend its insured, Levis Sosa Rodriguez, individually and d/b/a Sosa Drywall Specialist (Sosa), in the Underlying Lawsuit. (Doc. No. 21 at 5-12).  On the other hand, the Court denied Hiscox's Motion for Summary Judgment on the duty to indemnify Sosa, concluding that the duty to indemnify was not ripe until the conclusion of the Underlying Lawsuit. (Doc. No. 21 at 12-14). The Court administratively closed this case pending the resolution of the Underlying Lawsuit. (Doc. No. 21 at 14).

1

After Hiscox learned that a Default Judgment was rendered against Sosa in the Underlying Lawsuit on March 24, 2025, Hiscox successfully moved to reopen this case and for leave to file a Second Amended Complaint adding Jose Umanzor, the plaintiff in the Underlying Lawsuit and judgment creditor, as a defendant in this case. (Doc. Nos. 24-27). Because Umanzor failed to file an answer or responsive motion by the answer deadline, the Clerk entered default against him and Hiscox filed a Motion for Entry of Default Judgment on November 20, 2025, which is still pending. (Doc. Nos. 49-50).

Hiscox now moves for summary judgment on the question of its duty to indemnify Sosa for the Default Judgment in the Underlying Lawsuit. Hiscox's policy contains a "designated ongoing operations" exclusion that bars coverage for bodily injury arising out of any work or project involving a "[s]caffolding operation." Based on that exclusion and Umanzor's allegations in the Underlying Lawsuit that he suffered bodily injury at a jobsite when he fell from scaffolding constructed by himself and Sosa, this Court granted summary judgment on the duty to defend Sosa, concluding that the complaint allegations fell squarely within the exclusion's plain language. (Doc. No. 21 at 5-12).

The Court should likewise grant summary judgment for Hiscox on the duty to indemnify issue. For unknown reasons, no record was taken of the proceedings that led to the Default Judgment. However, the summary judgment evidence that Sosa filed in response to Hiscox's prior summary judgment motion—including Sosa's deposition testimony from the Underlying Lawsuit and Sosa's affidavit filed in this case—confirms that Umanzor, as he alleged in the Underlying Lawsuit, suffered bodily injury arising from a fall from scaffolding. Moreover, Sosa has failed to timely respond to Hiscox's Request for Admissions, resulting in deemed admissions that, among other things, Umanzor suffered bodily injury when he fell from scaffolding at a worksite and that

his injury arose out of a "scaffolding operation." Thus, the summary judgment evidence conclusively shows that the "designated ongoing operations" exclusion bars any duty to indemnify.

Alternatively, the summary judgment evidence, including the filings in the Underlying Lawsuit and Sosa's deemed admissions, establish that the Default Judgment in the Underlying Lawsuit was not the result of a "fully adversarial trial." Under Texas Supreme Court precedent, a judgment against an insured that is not the result of a fully adversarial trial is not binding on or enforceable against the insurer. Therefore, at minimum, the Court should declare that the Default Judgment is not binding on or enforceable against Hiscox.

## STATEMENT OF RELEVANT FACTS

Hiscox issued Commercial General Liability Policy number UDC-4622542-CGL-20 to Sosa as named insured for the policy period from October 6, 2020, to October 6, 2021 (the Policy). (A true and correct copy of the Policy is attached as Exhibit A to Exhibit 1, the Unsworn Declaration of Jason Kunert.) The Policy contains several coverage parts, but the only one applicable here is Section I, Coverage A – Bodily Injury and Property Damage Liability.

The insuring agreement for Section I, Coverage A of the Policy generally obligates Hiscox to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies[]" and "to defend the insured against any 'suit' seeking those damages." (Ex. A. to Ex. 1, p. 1 of Commercial General Liability Coverage Form (CG 00 01 12 07)). However, the Policy also contains an "Exclusion – Designated Ongoing Operations" endorsement that bars coverage for bodily injury arising out of designated operations, including but not limited to services or work on any project involving the following materials or infrastructure: "Scaffolding operation." The full exclusion states:

3

# EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Description of Designated Ongoing Operation(s):**

Services or work on any projects involving the following materials or infrastructure:

| | |
|---|---|
| Airports | Foundation, sheeting or retaining walls |
| Amusement rides, pools or playgrounds | Hazardous material or waste removal |
| Asbestos, lead, or mold evaluation or abatement | Hydraulic fracturing, hydrofracturing, or fracking |
| Automotive glass installation and repair | Landfills |
| Blasting or demolition | Liquefied petroleum gas (LPG) heating and air conditioning installation and repair |
| Bridges, dams, harbors, mines, piers or tunnels | Oil, gas or wells |
| Crane operation | Process piping |
| Emergency systems | Roofing |
| Exterior carpentry work | Scaffolding operation |
| Exterior electrical work | Tree removal |
| Exterior painting | Underground storage tanks or utilities |
| Exterior tile, stone, marble, mosaic, or terrazzo work | Window cleaning above 15 feet |
| Fire suppression | Any other similarly hazardous projects or materials |

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Cove-rages):
This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing opera-tions described in the Schedule of this endorsement, regardless of whether such operations are conduct-ed by you or on your behalf or whether the opera-tions are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such opera-tions are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this en-dorsement, this exclusion applies only to the de-scribed ongoing operations conducted at that "loca-tion".
For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

(Ex. A. to Ex. 1, Endorsement No. 15 (yellow highlighting added)).

In 2021, Sosa was named as a defendant in the Underlying Lawsuit filed by Umanzor in Texas state court. Sosa's counsel notified Hiscox of the Underlying Lawsuit and forwarded a copy of Plaintiff's Original Petition on or about November 4, 2021. (Ex. 1, ¶ 4; Exhibit B [Plaintiff's Original Petition] to Ex. 1).

Plaintiff's Original Petition in the Underlying Lawsuit alleged the following: On or about April 20, 2021, Plaintiff Jose Umanzor was employed by Sosa and was working at a construction site in Harris County, Texas. Mr. Umanzor and Mr. Sosa placed scaffolding to do the job, with Mr. Umanzor assembling one side of the scaffolding and Mr. Sosa the other side. "[Umanzor] was

going up the scaffolding when the side that Sosa assembled, collapsed and [Umanzor] fell onto the ground[,]" and "suffered extensive, injuries to his right foot, requiring him to undergo two different surgeries." (Ex. B to Ex. 1, ¶ 7). Plaintiff's Original Petition asserted causes of action against Sosa for negligence and as a non-subscriber under the Texas Workers Compensation Act (the Act). (Ex. B to Ex. 1, at ¶¶ 9-10). Mr. Umanzor sought to recover damages for past and future (1) medical expenses, (2) pain, suffering, and mental anguish, (3) physical impairment, and (4) physical disfigurement. (Ex. B to Ex. 1, ¶¶ 13-14).

On November 8, 2021, Hiscox advised Sosa's counsel, Chris Carmona, by email that the claim asserted in the Underlying Lawsuit was barred from coverage by the Policy's "Employer's Liability" exclusion. (Ex. 1, ¶ 5). (The employer's liability exclusion generally bars coverage for bodily injury to an employee of the insured arising out of and in the course of employment by the insured. (Ex. B to Ex. 1, p. 2 of CGL Coverage Form 00 01 12 07).

On or about February 3, 2022, Sosa's counsel forwarded Plaintiff's Amended Petition in the Underlying Lawsuit to Hiscox. (Ex. 1, ¶ 6; Exhibit C [Plaintiff's Amended Petition] to Exhibit 1). With one relevant exception, Plaintiff's Amended Petition makes the same factual allegations as Plaintiff's Original Petition concerning the date and location of the accident, Mr. Umanzor's injuries, and those injuries resulting when he fell to the ground from scaffolding when the side of the scaffolding assembled by Mr. Sosa collapsed. (Ex. C to Ex. 1, ¶ 7). The exception is that Plaintiff's Amended Petition alleges Mr. Umanzor was working as an independent contractor for, rather than an employee of, Sosa, although the Amended Petition also goes on to make an alternative allegation that Mr. Umanzor was an employee of Sosa. (Ex C to Ex. 1, ¶¶ 7-10[1]). Like

---

[1] The paragraph numbers in the Amended Petition are out of order. The cited paragraphs are on pages 2-3 of the Amended Petition.

the Original Petition, Plaintiff's Amended Petition asserts causes of action against Sosa Drywall for negligence and, based on the alternative allegation that Sosa was his employer, as a nonsubscriber under the Workers' Compensation Act. (Ex. C to Ex. 1, ¶¶ 8-10[2]). Plaintiff's Amended Petition seeks the same personal-injury damages as the Original Petition. (Ex. C to Ex. 1, ¶¶ 13-14).

By letter dated March 7, 2022, Hiscox denied coverage for the Underlying Lawsuit based on the Policy's Exclusion – Designated Ongoing Operations endorsement and the fact that Plaintiff's Amended Petition alleged his injuries were caused when he fell from scaffolding—an excluded operation—assembled by Sosa. (Ex. 1, ¶ 7). Hiscox also reserved its rights based on the employer's liability exclusion and the alternative allegation that Mr. Umanzor was an employee of Sosa. (Ex. 1, ¶ 7).

After receiving the March 7, 2022 declination letter, Sosa's counsel continued to contest the denial of coverage and improperly threatened to join Hiscox as a third-party defendant in the Underlying Lawsuit. (Ex. 1, ¶ 8). Hiscox therefore filed this declaratory judgment action seeking a declaration of whether it has a duty to defend and indemnify Sosa Drywall in the Underlying Lawsuit. On March 30, 2024, the Court granted summary judgment for Hiscox on the duty to defend issue but reserved ruling on the duty to indemnify pending resolution of the Underlying Lawsuit. (Doc. No. 21 at 5-12).

Almost exactly a year later, in an attempt to determine the status of the Underlying Lawsuit, Hiscox's counsel reviewed the underlying court's docket sheet and learned that a Final Judgment/Order Granting Plaintiff's Motion for Entry of Default Judgment Against Defendants

---

[2] The paragraphs of the Amended Petition are out of order. The cited paragraphs are on pages 3-4 of the Amended Petition.

(Default Judgment) had been rendered against Sosa on March 24, 2025.  (Exhibit 2, Affidavit of Wade Crosnoe, ¶ 3; Exhibit A [Default Judgment signed March 24, 2025] to Ex. 2). The Default Judgment purported to grant Plaintiff's Motion for Entry of Default Judgment and said that, "after hearing evidence and arguments presented by their counsel," including "evidence of Plaintiff's unliquidated damages[,]" the Court awarded Plaintiff damages for past and future medical expenses totaling $714,582.12. (Ex. A to Ex. 2).

Despite the recitation in the Default Judgment, a review of the underlying court's "Document" list for the case does not reflect that a Motion for Entry of Default Judgment was filed. (Exhibit A [Document List] to Exhibit 3, Affidavit of Trish Koula). Furthermore, the court reporter for the underlying court has advised the assistant for Hiscox's counsel that no record was taken of the Default Judgment hearing. (Ex. 3, ¶ 2; Exhibit B [Email from court reporter dated November 17, 2025] to Ex. 3). The documents in the court's file also indicate that the Default Judgment was signed on March 24, 2025, just six days after the court denied the Motion for Withdrawal of Counsel and Agreed Motion to Continue [March 18, 2025 trial setting] filed by Sosa's counsel, Chris Carmona. (Exhibits B [Motion for Withdrawal of Counsel] and C [Order Denying Motion to Withdraw] to Ex. 2). In other words, Sosa was still represented by counsel at the time of the Default Judgment and was aware of the trial setting.

After learning of the Default Judgment, Hiscox moved for and obtained leave to file a Second Amended Complaint joining Jose Umanzor, the plaintiff in the underlying lawsuit and judgment creditor, as a defendant. (Doc. Nos. 24-27). Because Mr. Umanzor failed to timely answer after being served, the Clerk entered a default against him. (Doc. No. 49). Hiscox's Motion for Entry of Default Judgment against him is pending. (Doc. No. 50).

On November 12, 2025, Hiscox served Requests for Admissions on Mr. Sosa by regular and certified mail at the address given for him in his counsel's motion to withdraw as counsel filed in this case on April 14, 2025. (Ex. 2, ¶ 4; Exhibit D [Plaintiff's First Set of Requests for Admissions, Requests for Production, and Interrogatories to Defendant Levis Sosa Rodriguez] to Ex. 2; Doc. No. 29 at 1). Sosa did not serve written answers or objections to the Requests for Admissions within 30 days (or at any time since). (Ex. 2, ¶ 4). Accordingly, as further discussed below, those Requests for Admissions have been deemed admitted.

**ARGUMENT AND AUTHORITIES**

## I.      Summary Judgment Standard

A party may move for summary judgment on a claim or defense or a part of a claim or defense.  Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *Id.*  In responding to the motion, "the nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is no genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## II.     Insurer's Duties to Defend and Indemnify Under Texas Law

In determining whether an insurer has a duty to defend an insured against a third-party complaint, Texas courts follow the "eight corners" or "complaint allegation" rule.  *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). This rule generally requires courts to determine the duty to defend by comparing the complaint allegations to the relevant policy provisions, without regard to the truth or falsity of those allegations and without considering any extrinsic evidence. *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022); *BITCO Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329 (5th

Cir. 2022). The duty to defend arises when the facts alleged in the petition, taken as true, potentially state a covered claim. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) (citing *Fielder Rd. Baptist Church*, 197 S.W.3d at 310).

On the other hand, the duty to indemnify is based on the actual facts established in the underlying suit against the insured, as opposed to the complaint allegations. *Fielder Rd. Baptist Church*, 197 S.W.3d at 310. "[T]he parties may offer extrinsic evidence to prove or negate the insurer's duty to indemnify if the underlying never goes to trial or if trial does not develop the facts necessary to determine policy coverage." *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016) (citing *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 254-55 (5th Cir. 2011)).

## III.    Hiscox Has No Duty to Indemnify Sosa for the Default Judgment

### A.    The "designated ongoing operations" exclusion

Endorsement 15 to the Policy—entitled Exclusion – Designated Ongoing Operations—states, in relevant part:

> This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

(Ex. A. to Ex. 1, Endorsement No. 15). The endorsement's Schedule lists, among other designated operations, "Services or work on any projects involving the following materials or infrastructure: . . . Scaffolding operation . . . ." (Ex. A to Ex. 1, Endorsement 15).

### B.    This Court's interpretation of the exclusion

The Court's reasoning in granting summary judgment for Hiscox on the duty to defend, and particularly its construction of the "designated ongoing operations" exclusion, is relevant to

9

the Court's construction of the same exclusion for the purposes of determining the duty to indemnify. Therefore, the Court's reasoning is summarized briefly here.

In granting summary judgment for Hiscox on the duty to defend, the Court explained that under the plain text of the exclusion it applies "if Umanzor's injuries 'arose out of' a 'scaffolding operation.'" (Doc. No. 21 at 7).  The Court noted that the phrase "arise out of" is construed broadly under Texas law and requires only a causal connection or relation, meaning "but for" cause but not necessarily direct or proximate causation. (Doc. No. 21 at 7-8) (citing *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)); *accord DP Eng'g, L.L.C.*, 827 F.3d at 427 (citing *Utica Nat'l Ins. Co. of Tex.*, 141 S.W.3d at 203)). In addition to being consistent with the exclusion's plain language, the Court's interpretation is also generally consistent with the limited Texas cases law interpreting similar exclusions. *See Companion Prop. & Cas. Ins. Co. v. Opheim*, 92 F. Supp. 3d 539, 552-53 (N.D. Tex. 2015) (concluding that designated ongoing operations exclusion that applied to "roofing" operations barred coverage for an arbitration award to the extent it awarded damages for water damage to a house caused by the insured's demolition of the roof during a remodeling project); *Philadelphia Indem. Ins. Co. v. Megalomedia, Inc.*, No. 4:20-CV-1644, 2021 WL 5155710, at *2, 5 (S.D. Tex. June 1, 2021) (concluding that insured's construction of designated ongoing operations exclusion that barred coverage for bodily injury arising out of, among other things, "any/all reality shows," was contradicted by the "plain, ordinary and generally accepted meaning of the Policies' terms.").

The Court also rejected Sosa's arguments about the interpretation of the exclusion, including his argument that the exclusion did not apply to an alleged one-time use of scaffolding. (Doc. No. 21 at 9-11). The Court explained that insurance policies typically distinguish between "ongoing" and "completed" operations with the former phrase interpreted by the Fifth Circuit as

referring to "damages that occur during 'the active performance of work.'" (Doc. No. 21 at 11) (citing *Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 562 (5th Circ. 2020)). "Because Umanzor was injured during the 'active performance of work,'" the Court concluded that "his injury occurred during an 'ongoing' scaffolding operation." (Doc. No. 21 at 11).

Based on this reading of the exclusion, the Court determined that the exclusion barred the duty to defend because "the face of Umanzor's petition expressly states that he fell off a scaffold as a factual matter." (Doc. No. 21 at 7). The allegations in Umanzor's petitions in the Underlying Lawsuit—which describe the cause of his injury as a fall resulting from the collapse of scaffolding—bear this reading out. (Ex. B to Ex. 1, ¶ 7; Ex. C to Ex. 1, ¶ 7).

### C.      The "designated ongoing operations" exclusion bars any duty to indemnify

#### *1.      No evidence is available from the Default Judgment hearing*

Unfortunately, we do not know what evidence, if any, Umanzor presented regarding the cause of the accident at the Default Judgment hearing. No record was taken of that hearing. (Ex. 2, ¶ 2; Ex. B to Ex. 2). Although the Document list for the Underlying Lawsuit reflects that unidentified "exhibits" were submitted to the court with the proposed order granting default judgment, the exhibits are marked as "restricted" and are not accessible online. (Ex. 3, ¶ 3; Ex. A to Ex. 3 at 1). When the assistant to Hiscox's counsel called the district clerk's office about accessing those exhibits, she was connected to a help-desk technician who told her only parties to the case or their attorneys of record can access those exhibits. (Ex. 3, ¶ 3). Hiscox's Requests for Production to Sosa also requested copies of any exhibits submitted to the underlying court in connection with the Default Judgment but he has not timely responded to those requests. (Ex. 2, ¶ 4; Ex. D to Ex. 2 at 5 [RFP 6]).

In the absence of participation in this declaratory judgment action by the parties to the Underlying Lawsuit—Sosa (who is unrepresented in this case and has not responded to discovery) and Umanzor (who has never appeared in this case and is in default)—it appears that any such exhibits are not obtainable. However, the only specific evidence referenced in the Default Judgment itself is evidence of "Plaintiff's unliquidated damages." (Ex. A to Ex. 2 at 1). To the extent the exhibits addressed the cause of the accident at all, the exhibits were presumably consistent with the factual allegations in Umanzor's petitions discussed above—specifically, that he fell and injured himself when scaffolding collapsed—and with the deposition testimony from that case, discussed below.

       **2.**     *Sosa's depostion testimony from the Underlying Lawsuit and his affidavit in this case conclusively establish the exclusion applies*

In his deposition taken in the Underlying Lawsuit on May 16, 2022, Sosa testified that on the accident date, he purchased a scaffold that was bigger than the scaffold he typically used in order to be safe because of the height of the ceiling on which they were working. (Exhibit 4, Transcript of Oral Deposition of Levis Sosa taken on May 16, 2022 [depo pg. 14, ln. 7 – pg. 17, ln. 7; pg. 23, lns. 21-25]).[3] When asked to describe the accident, Sosa explained that Umanzor fell from the scaffolding at the jobsite:

> Okay. We put together the scaffold – me and Jose – and I tell him when we have it ready – we're about to put a piece of sheetrock on the ceiling – and I tell him before to get on the top of the scaffold, I tell him, like, three times check the scaffold – the ramp you put on the top – and I tell him, "Check it."
>
>                 \* \* \*

---

[3] The deposition was originally filed as Exhibit C to Defendant's Response to Plaintiff's Motion for Summary Judgment filed on September 1, 2022. (Doc. No. 13-3). It is attached as an exhibit to this motion for the Court's convenience.

> He tell me, "No, everything is okay."
>
> And that – and then I was on the floor and he get to the top of the ramp, and I give him the piece of sheetrock. When he tried to put the sheetrock on the ceiling, he kind of shake on the – on the scaffold, and that's when he fell off.

(Ex. 4 [depo pg. 18, lns. 3-8, 14-22]). (Sosa clarified later in the deposition that the "ramp" was the board at the top of the scaffold. (Ex. 4 [depo pg. 27, lns. 4-8])). Sosa also testified that Umanzor helped him put the scaffold together (Ex. 4 [depo pg. 25, lns. 10-12]) and elaborated that when Umanzor tried to put sheetrock on the ceiling the board at the top of scaffold collapsed, causing him to fall to the floor and hurt his foot. (Ex. 4 [depo pg. 26, ln. 21 – pg. 28, ln. 8]).[4]

Similarly, the Affidavit of Levis Sosa Rodriguez, filed in support of his Response to Hiscox's prior Motion for Summary Judgment, referenced the "scaffold" and admitted that "Mr. Umanzor allegedly sustained injuries after the side of the platform ladder/scaffold collapsed causing Mr. Umanzor to fall to the ground." (Exhibit 5, Affidavit of Levis Sosa Rodriguez, at 2-3).[5] Although his affidavit characterized the use of the platform ladder/scaffold as a "onetime use" that was not an "ongoing operation" (Ex. 5 at 3), his deposition testimony belies that characterization. Specifically, Sosa testified that he regularly used smaller scaffolds in his work. (Ex. 4 [depo pg. 14, ln. 7 – pg. 15, ln. 7; depo pg. 23, lns. 21-25]). Sosa also testified that he continued to use the larger scaffold at issue for a week after the accident. (Ex. 4 [depo pg. 28, ln.

---

[4] Although Umanzor's deposition from the Underlying Lawsuit was also filed as Exhibit B to Sosa's Response to Plaintiff's Motion for Summary Judgment, Sosa's counsel (strangely) did not ask Umanzor any questions about the accident or how it occurred and, as a result, his testimony does not address those matters. (Doc. No. 13-2).

[5] The affidavit was originally filed as Exhibit A to Defendant's Response to Plaintiff's Motion for Summary Judgment. (Doc. No. 13-1). It is attached as an exhibit to this motion for the Court's convenience.

23 – pg. 29, ln. 3]). Regardless, as explained above, this Court has already rejected Sosa's argument that the exclusion would not apply to a "onetime use." (Doc. No. 21 at 9-11).

      *3.*      *Sosa's deemed admissions also conclusively establish that the exclusion applies*

On November 12, 2025, Hiscox served its First Set of Requests for Admissions, Requests for Production, and Interrogatories to Defendant Levis Sosa Rodriguez. (Ex. 2, ¶ 4; Ex. D to Ex. 2). The discovery was served by certified and regular mail to Sosa at the address given for Sosa in his counsel's motion to withdraw filed in April 2025. (Ex. D to Ex. 2 at 2; Doc. No. 29 at 1). In Requests for Admissions Nos. 1 and 2, Hiscox requested that Sosa admit the following:

> **REQUEST FOR ADMISSION NO. 1:** Admit that Umanzor suffered bodily injury on or about April 20, 2021, when he fell from scaffolding that collapsed at a worksite.
>
> **REQUEST FOR ADMISSION NO. 2.** Admit that Umanzor suffered bodily injury arising out of a scaffolding operation on or about April 20, 2021.

(Ex. D to Ex. 2 at 4).

Sosa did not serve answers or objections to the Request for Admissions within 30 days of November 12, 2025—meaning by December 12, 2025—or anytime in the more than one month since. (Ex. 2, ¶ 4). As a result, Sosa is deemed to have admitted that (1) "Umanzor suffered bodily injury on or about April 20, 2021, when he fell from scaffolding that collapsed at a worksite[]" and (2) "Umanzor suffered bodily injury arising out of a scaffolding operation on or about April 20, 2021." *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney") Furthermore, "[a] matter admitted under [rule 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Because these deemed

admissions conclusively establish that Umanzor's bodily injury arose from a fall from scaffolding and a scaffolding operation—an injury and conduct falling squarely within the Policy's "designated ongoing operations" exclusion, the exclusion relieves Hiscox of any duty to indemnify Sosa for the Default Judgment.

### 4.    Conclusion on "designaed ongoing operations" exclusion

In summary, Sosa's own deposition testimony, his affidavit, and his deemed admissions establish that Umanzor's injuries arose out of a scaffolding operation. Thus, the "designated ongoing operations" exclusion bars any duty by Hiscox to indemnify Sosa for the Default Judgment in the Underlying Lawsuit, and this Court should grant summary judgment for Hiscox on the duty to indemnify issue.

## IV.    Alternatively, the Default Judgment Is Not Enforceable Because It Was Not the Result of a Fully Adversarial Trial

If the Court agrees that the "designated ongoing operations" exclusion relieves Hiscox of a duty to indemnify Sosa, it need not address the rest of this motion. In the alternative, however, Hiscox moves for a partial summary judgment that the Default Judgment is not enforceable against Hiscox because the judgment did not result from a fully adversarial trial.

### A.    The "fully adversarial trial" requirement

In the seminal *State Farm v. Gandy* case, the Supreme Court of Texas outlined the circumstances under which an insured's assignment of its claims against a liability insurer to the claimant is void as against public policy. *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996). More importantly, for the purposes of this motion, the court then added: "*In no event, however,* is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee." *Id.* (emphasis added). As the Supreme

15

Court of Texas subsequently clarified, this means that "a plaintiff may not enforce an underlying judgment against the defendant's insurer absent a "fully adversarial trial"—even if the insurer breaches its duty to defend. *Great Am. Ins. Co. v. Hamel*, 525 S.W.3d 655, 665 (Tex. 2017) (quoting *Gandy*, 925, S.W.2d at 714).

Here, of course, Hiscox did not breach its duty to defend because this Court has ruled Hiscox had no such duty. (Doc. No. 21 at 5-12). But even if Hiscox had breached a duty to defend, the underlying Default Judgment could not be binding on Hiscox unless it was the product of a fully adversarial trial. As explained below, there was no such fully adversarial trial.

**B.** **The summary judgment evidence conclusively establishes that the Default Judgment was not the result of a fully adversarial trial**

In this case, the underlying Default Judgment was signed just six days after the underlying court denied the Motion for Withdraw of Counsel and Agreed Motion to Continue filed by Sosa's counsel, Chris Carmona. (Exs. A & C to Ex. 2). That motion sought, in addition to Carmona's withdrawal as counsel, a continuance of the March 18, 2025 trial setting. (Ex. B to Ex. 2). The Default Judgment recites that the hearing occurred on March 24, 2025. (Ex. A to Ex. 2 at 1). In other words, Sosa's counsel was aware of the trial setting, his motion to withdraw as counsel was denied, and he failed to appear for the trial anyway.

"[W]hen the judgment is an agreed judgment, *default judgment*, or when the underlying defendant's participation is so minimal as to evidence that the hearing was not adversarial, the judgment resulting from that hearing may not be admitted as evidence of damages in the *Stowers* action." *Yorkshire Ins. Co., Ltd. v. Seger*, 407 S.W.3d 435, 443 (Tex. App.—Amarillo 2013) (citing *Yorkshire Ins. Co. v. Seger*, 279 S.W.3d 755, 772 n.25 (Tex. App.—Amarillo 2007, pet. denied) (*Seger I*) (citing *Gandy*, 925 S.W.2d at 713, 714)) (emphasis added), *aff'd on other grounds*, 503 S.W.3d 388 (Tex. 2016)). Thus, when the defendant's participation at the trial was

"so minimal" that "the underlying judgment [was] most fairly characterized as a post-answer default judgment[,]" the underlying judgment was neither conclusive nor even admissible as evidence of damages in the subsequent coverage/*Stowers* action. *Seger*, 407 S.W.3d at 443 (citing *Gandy*, 925 S.W.2d at 713-14; *Seger I*, 279 S.W.2d at 772).

The facts of this case are considerably more favorable to Hiscox than to the insurer in *Seger*. Unlike in that case, the insured (Sosa) did not appear at all at the trial—even though no record was made, we know this because he was found to be in default—and an actual Default Judgment was rendered, not merely one that could be fairly characterized as such. Thus, under the reasoning in *Seger*, the Default Judgment was not the result of a fully adversarial trial and is not binding on Hiscox.

Moreover, Hiscox's Requests for Admissions Nos. 5-7 asked that Sosa admit the following:

> **REQUEST FOR ADMISSION NO. 5:** Admit that the Default Judgment in the Underlying Lawsuit was not the result of a fully adversarial trial.
>
> **REQUEST FOR ADMISSION NO. 6:** Admit that neither you nor your attorney attended the Default Judgment hearing that occurred in the Underlying Lawsuit on or about March 24, 2025.
>
> **REQUEST FOR ADMISSION NO. 7:** Admit that neither you nor your attorney opposed the relief sought by Jose Umanzor at the Default Judgment hearing that occurred in the Underlying Lawsuit on or about March 24, 2025.

(Ex. 2, ¶ 4; Ex. D to Ex. 2 at 4).  Because Sosa did not timely object or respond to those requests (Ex. 2, ¶ 4), all of those matters, including the lack of a fully adversarial trial, are deemed admitted and conclusively established. *See* Fed. R. Civ. P. 36(a)(3) & (b). In the absence of a fully adversarial trial, this Court should, at minimum, grant a partial summary judgment declaring that the Default Judgment is not binding on or enforceable against Hiscox.

### CONCLUSION

In conclusion, as established by Sosa's own testimony and sworn statements and deemed admissions, the Policy's "designated ongoing operations" exclusion relieves Hiscox of any duty to indemnify Sosa for the Default Judgment. Alternatively, the Default Judgment is not binding on or enforceable against Hiscox in light of the circumstances under which it was entered and the deemed admissions. Hiscox therefore respectfully requests that the Court grant this motion and render a final declaratory judgment that Hiscox has no duty to indemnify Sosa for the Default Judgment. Alternatively, Hiscox asks that the Court grant this motion and render a partial declaratory judgment that the Default Judgment is not binding on or enforceable against Hiscox in this action or any other. Hiscox also requests all other relief to which it is justly entitled.

Respectfully submitted,

*/s/ Wade C. Crosnoe*
Wade C. Crosnoe
Attorney-in-Charge
State Bar No. 00783903
SDT Bar No. 19819
THOMPSON, COE, COUSINS & IRONS, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
Telephone: (512) 703-5078
Facsimile: (512) 708-8777
E-mail: wcrosnoe@thompsoncoe.com

**Counsel for Plaintiff Hiscox Insurance Company Inc.**

18

### CERTIFICATE OF SERVICE

I certify that on January 15, 2026, a true and correct copy of this document was served on the unrepresented parties listed below via certified mail, return receipt requested, and regular mail:

Levis Sosa Rodriguez
Individually and d/b/a Sosa Drywall Specialist
12827 E. Greenwick Loop
Houston, Texas 77085
*Pro Se Defendant*

Jose Umanzor
5801 N. Houston Rosslyn Rd., Apt. # 407
Houston, Texas 77091
*Pro Se Defendant*

*/s/ Wade C. Crosnoe*
Wade C. Crosnoe

19